IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JUSTIN PETERSON,**

              Plaintiff,                                  No. 3:19-cv-01701-MO

     v.

                                              OPINION AND ORDER

**C R BARD INCORPORATED;** and **BARD PERIPHERAL VASCULAR INCORPORATED,**

              Defendants.

**MOSMAN, J.,**

I write to explain or clarify my reasoning for two prior rulings. First, on January 21, 2021, in a minute order, I ruled on the choice-of-law issue presented by this case. Order [ECF 66]. I write separately here to explain my reasoning. Second, on January 25, 2021, at a hearing, I granted in part and denied in part Defendants' Motion for Partial Summary Judgment [ECF 41]. *See* Minutes of Proceedings [ECF 70]. I write briefly here to clarify one of my rulings.

Additionally, I GRANT Defendants' oral motion for summary judgment as to Count III. At the January 25 hearing, I ordered Plaintiff Justin Peterson to inform the court of his position as to Count III, a strict-liability claim based on design defect, considering my ruling as to Count II, a strict-liability claim based on failure to warn. Mr. Peterson has since informed the court via email that Count III cannot be meaningfully distinguished from Count II.

1 – OPINION AND ORDER

**DISCUSSION**

### I.    Choice of Law

Mr. Peterson argues that Oregon law should apply to each of his claims. Defendants Bard Peripheral Vascular, Inc. ("Bard Peripheral") and C.R. Bard, Inc. (collectively, "Bard Defendants") argue that Pennsylvania law should apply to all of Mr. Peterson's claims except his claim for punitive damages, to which Arizona law should apply.

In 2010, while a resident of Pennsylvania, Mr. Peterson received an inferior vena cava ("IVC") filter at a Pennsylvania hospital. Taylor T. Daly Decl. [ECF 42, 47] Ex. F, at 8; Ex. G, at 3. He later moved to Oregon, where, in 2015, his alleged injury occurred, and the filter was removed. *Id.* Ex. F, at 8, 47–48; Ex. G, at 24–26. Bard Peripheral is "principally responsible" for the Eclipse filter, which is the filter at issue here. *Id.* Ex. L, ¶ 4. Bard Peripheral is headquartered in Arizona, where it designed, tested, and directed the manufacture of the Eclipse filter. *Id.* Ex. L, ¶¶ 3, 5. In Arizona, Bard Peripheral developed the Eclipse filter's instructions and marketing material; developed written communications to physicians; trained its sales force on how to interact with physicians; and communicated with the FDA about the Eclipse filter. *Id.* Ex. L, ¶ 5. The Bard Defendants marketed and sold its product in Pennsylvania. *See* Pl.'s Resp. [ECF 53, 55] App. II, Ex. 46, at 103–05.

#### A.    General Principles

"Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). "The threshold question in a choice-of-law problem is whether the laws of the different states actually conflict." *Spirit Partners, LP v. Stoel Rives LLP*, 157 P.3d 1194, 1198 (Or. Ct. App. 2007). The party who wants to apply non-Oregon law "has the obligation to identify a

material difference between Oregon law and the law of the other state." *Portfolio Recovery Assocs., LLC v. Sanders*, 425 P.3d 455, 459 (Or. Ct. App. 2018).

Here, the Bard Defendants have identified several material differences between Oregon law and the law of Pennsylvania and Arizona. For example, as I explained at the hearing and clarify below, I predict the Pennsylvania Supreme Court would rely on *Hahn v. Richter*, 673 A.2d 888, 889–91 (Pa. 1996), to extend comment k of the Restatement (Second) of Torts § 402A to bar Mr. Peterson's strict-liability claims. The courts in Oregon have a different interpretation of comment k, under which Mr. Peterson's strict-liability claims would likely survive summary judgment. *See Senn v. Merrell-Dow Pharm., Inc.*, 751 P.2d 215, 218 n.4 (Or. 1988) (en banc). Additionally, Mr. Peterson concedes that his breach-of-warranty claims cannot survive summary judgment under Pennsylvania law. Pl.'s Resp. [ECF 53] at 29 n.94. And the parties agree that Pennsylvania has adopted the "learned intermediary doctrine," while Oregon has not. *See id.* at 21, 29; Defs.' Mot. Partial Summ. J. [ECF 41] at 17. Finally, an Arizona law bars Mr. Peterson's claim for punitive damages. *See* Ariz. Rev. Stat. § 12-689(A) (providing that punitive damages are unavailable if the manufacturer of a product adheres to government specifications). Neither Oregon nor Pennsylvania has a similar law.[1]

Accordingly, the choice-of-law issue matters here. In Oregon, the choice-of-law rules are codified. Or. Rev. Stat. §§ 15.410–.460 (codification of choice-of-law rules for noncontractual claims). I apply those rules to determine which state's law applies.

---

[1] As to punitive damages, the Bard Defendants argue that a "false conflict" exists because Mr. Peterson's claim would be procedurally barred under Oregon law. Defs.' Mot. Partial Summ. J. [ECF 41] at 21–22 (discussing Or. Rev. Stat. § 31.725). But that procedural bar is inapplicable in federal court, even in diversity cases. *McLean v. Pine Eagle Sch. Dist., No. 61*, 194 F. Supp. 3d 1102, 1127 n.12 (D. Or. 2016). And this argument fails to account for Pennsylvania law. *See Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." (internal quotation marks and citation omitted)).

**B.     Oregon's Choice-of-Law Rules**

Oregon has a specific set of rules for product-liability actions. *Id.* § 15.435. Under those rules, Oregon law applies if, at the time of the injury, the plaintiff was domiciled in Oregon and Oregon was the place of the injury. *Id.* § 15.435(1)(a); *see also id.* § 15.420(3) (defining "domicile"); Symeon C. Symeonides & James A.R. Nafziger, Oregon Law Commission, *Choice of Law for Torts and Other Non-Contractual Claims: Reports and Comments* 18 (2009) [hereinafter "OLC Commentary"].[2] Mr. Peterson satisfies those requirements, suggesting that Oregon law should apply.

However, there are two exceptions to the rule. Or. Rev. Stat. § 15.435(2)–(3); OLC Commentary 18–19. I discuss them in turn.

**1.     Exception One**

Under the first exception, Oregon law might not apply if a defendant shows that (1) "the use in Oregon of the product that caused the injury could not have been foreseen," and (2) "none of the defendant's products of the same type were available in Oregon in the ordinary course of trade at the time of the injury." Or. Rev. Stat. § 15.435(2). If a defendant satisfies both requirements of this exception, the specific set of choice-of-law rules for product-liability actions does not apply, and the court must turn to Oregon's general and residual approach. *Id.* 15.435(4); OLC Commentary 19.[3]

---

[2] Oregon law mandates the availability of this commentary. Or Rev. Stat. § 15.460 ("The Oregon Law Commission shall make available . . .  a copy of the commentary approved by the commission for the provisions of [Oregon's choice-of-law rules for noncontractual claims].") The commentary is a useful tool for courts as they engage in a choice-of-law analysis under Oregon law. *See, e.g.*, *R.M. v. Am. Airlines, Inc.*, 338 F. Supp. 3d 1203, 1210, 1212 (D. Or. 2018) (relying in part on the commentary).

[3] For the remainder of this opinion, I will refer to the "general and residual approach" simply as the "residual approach."

As to the first requirement, the Oregon choice-of-law rules define "foreseeability" differently than tort law. OLC Commentary 25. "The pertinent question here is not whether one should have foreseen the occurrence of the injury, but whether one should have foreseen that the injury would occur *in the particular state in which the injury did occur*." *Id.* at 25; *see also R.M.*, 338 F. Supp. 3d at 1212 (same). "For example, one who operates a factory in close proximity to the border with another state should foresee that any harmful emissions from the factory may cause injury in the other state because the wind may blow in that direction." OLC Commentary 25. I also think this requirement should be applied to the particular plaintiff before the court. In other words, the question is not whether the defendant could have foreseen that *somebody* would be injured in Oregon, but whether the defendant could have foreseen that *the particular plaintiff before the court* would be injured in Oregon. Otherwise, the first requirement would collapse into the second.

As to the second requirement, a defendant must show that at the time of the injury, none of its "*products of the same type* were available in Oregon in the ordinary course of trade." Or. Rev. Stat. § 15.435(2) (emphasis added). Based on the plain language, a defendant may not merely show that the exact product at issue was unavailable in Oregon. A defendant must also show that products of the same type as the product at issue were unavailable in Oregon.

The Bard Defendants have satisfied the first requirement. Mr. Peterson received the Eclipse filter in a Pennsylvania hospital when he was a resident of Pennsylvania. Although the occurrence of his injury might have been foreseeable, that is not the relevant question. The relevant question is whether the Bard Defendants should have foreseen that Mr. Peterson's injury would occur in the particular state of Oregon. And as to that question, the answer is no.

But the Bard Defendants have not satisfied the second requirement. They provide evidence that they discontinued the Eclipse filter before Mr. Peterson's injury. *See* Taylor T. Daly Decl. [ECF 58] Ex. N, at 1. They have not, however, provided any evidence that they discontinued products of the same type as the Eclipse filter, such as other IVC filters, in Oregon.

The Bard Defendants have failed to meet their burden to satisfy the first exception. I turn now to the second exception.[4]

### 2. Exception Two

Under the second exception to the general rule, the law of a state other than Oregon shall apply "[i]f a party demonstrates that the application of the law of a state other than Oregon to a disputed issue is substantially more appropriate under the principles of [the residual approach]." Or. Rev. Stat. § 15.435(3). Unlike the first exception, the second exception "operates on an issue-by-issue basis." OLC Commentary 18–19. In other words, a hypothetical defendant could show that the law of another state is substantially more appropriate than Oregon law on one issue, such as the availability of punitive damages, but not on the remaining issues. "[E]ach state having relevant contacts with a given multi-state case may not be equally concerned with regulating all issues in the case, but may only be concerned with those issues that actually implicate its policies in a significant way." *Id.* at 30. The Oregon Law Commission explained:

> This issue-by-issue analysis, which is an integral feature of all modern American choice-of-law methodologies, facilitates a more nuanced and individualized resolution of conflicts problems. One result of this analysis is that, in some cases, the laws of different states govern different issues in the same dispute. . . . [T]his phenomenon is now a common occurrence in the United States. . . . However, [it] should not be pursued for its own sake. The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.

---

[4] Even if I had found the first exception met, I would then have to apply the residual approach. Or. Rev. Stat. § 15.445(4); OLC Commentary 19. As discussed in the next section, the second exception also turns on the residual approach.

*Id.*

The Bard Defendants ask me to split the issue of punitive damages from the issues of product-liability and compensatory damages. I agree that if I were to split the issues, this is the only logical way to do so. Mr. Peterson has sued on a number of theories, including strict liability, negligence, and breach of warranty. Pl.'s Compl. [ECF 1] at 3. These are common theories in any product-liability action, and the theories have developed together. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 401 (Pa. 2014) ("[T]he theory of strict liability as it evolved overlaps in effect with the theories of negligence and breach of warranty."). Given their shared history and development, it makes sense to apply the same state's law to all three. The alternative would upset a state's careful development of its product-liability law. For example, consider Mr. Peterson's claim that the Bard Defendants failed to warn of the Eclipse filter's dangers. In the context of prescription drugs, the Pennsylvania Supreme Court has held that such a claim may proceed on a negligence theory but *not* on a strict-liability theory. *Hahn*, 673 A.2d at 889. At its core, this was a policy determination. *See Tincher*, 104 A.3d at 386 ("As they have been passed down to the present, the common law principles that delineate the strict liability cause of action, and the limits upon strict liability, reflect a balance of interests respecting what is socially or economically desirable."). If I were to apply, for example, Oregon law to the strict-liability claims and Pennsylvania law to the negligence claims, I would upset this delicate balance and distort the policies of the two states. This would be the sort of unnecessary splitting the Oregon Law Commission advised against, and I decline to do so.

Accordingly, I apply the residual approach first to the product-liability claims, and then to the issue of punitive damages.

### a)    Product-Liability Issues

Under the residual approach, the most appropriate law is determined by:

1) Identifying the states that have a relevant contact with the dispute, such as the place of the injurious conduct, the place of the resulting injury, the domicile, habitual residence or pertinent place of business of each person, or the place in which the relationship between the parties was centered;

2) Identifying the policies embodied in the laws of these states on the disputed issues; *and*

3) Evaluating the relative strength and pertinence of these policies with due regard to:

    (a) The policies of encouraging responsible conduct, deterring injurious conduct and providing adequate remedies for the conduct; *and*

    (b) The needs and policies of the interstate and international systems, including the policy of minimizing adverse effects on strongly held policies of other states.

Or. Rev. Stat. § 15.445. According to the Oregon Law Commission, the court should "choose the law of the state which, in light of its relationship to the parties and the dispute—and its policies rendered pertinent by that relationship—would sustain the most serious legal, social, economic, and other consequences of the choice-of-law-decision." OLC Commentary 29.

The states that have a relevant contact with this dispute are Oregon (where Mr. Peterson's injury occurred), Pennsylvania (where the Bard Defendants marketed the Eclipse filter and Mr. Peterson received it), and Arizona (where Bard Peripheral designed the filter and developed the filter's instructions, among other things). As to the product-liability issues, neither party contends that the application of Arizona law is substantially more appropriate than the application of Oregon law. Thus, Arizona law will not apply to those issues. *See* Or. Rev. Stat. § 15.435 (a party must demonstrate that the law of another state is more appropriate than Oregon law for the second exception to apply). The choice is between Pennsylvania and Oregon.

Under the first factor, Pennsylvania law is significantly more appropriate than Oregon law. True, Mr. Peterson's resulting injury occurred in Oregon, and he is currently domiciled here. Mr. Peterson relies entirely on those facts to argue Oregon law should apply. Pl.'s Resp. [ECF 53] at 19. But as described above, Mr. Peterson's place of injury was fortuitous. *See Rowland v. Novartis Pharm. Corp.*, 983 F. Supp. 2d 615, 624–25 (W.D. Pa. 2013) (explaining that place of injury is fortuitous where "the conduct did not determine the location of the injury, and the intentions and decisions of the parties did not determine the location of the injury"). And other facts cut against that argument. Mr. Peterson might be domiciled in Oregon now, but he was domiciled in Pennsylvania when he received the filter. And although Mr. Peterson never directly interacted with the Bard Defendants, he received their Eclipse filter in a Pennsylvania hospital. The Bard Defendants "pertinent place of business," at least as to the issues of product liability, would include Pennsylvania, where it marketed and sold the filter. *See* OLC Commentary 28 (explaining that "pertinent" in Or. Rev. Stat. § 15.445(1) means "pertinent to the disputed issues" and "may be a relative contact in appropriate circumstances"). This case's unforeseeable connection to Oregon is simply too tenuous to overcome these strong Pennsylvania ties.

Under the second and third factors, Pennsylvania law is again more appropriate. Generally speaking, and as is made clear in the briefing, both states have policies that broadly encourage responsible conduct, deter injurious conduct, and provide adequate remedies for injurious conduct. Both Pennsylvania and Oregon offer Mr. Peterson an opportunity to redress his alleged injury, even if they go about it in different ways. And both states have intentionally developed the law in this arena with an emphasis on policy. For example, the Pennsylvania Supreme Court recently stated: "Strict liability in tort for product defects is a cause of action

which implicates the social and economic policy of this Commonwealth." *Tincher*, 104 A.3d at 381; *see also Ash v. Continental Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007) (explaining that "[t]ort actions lie for breaches of duties imposed by law as a matter of social policy" (internal quotation marks and citation omitted)). In Pennsylvania, "the common law principles that delineate the strict liability cause of action, and the limits upon strict liability, reflect a balance of interests respecting what is socially or economically desirable." *Tincher*, 104 A.3d at 386. In Oregon, product-liability law is codified, reflecting policy determinations made by the legislative branch. Or. Rev. Stat. §§ 30.900–928; *see also Griffith v. Blatt*, 51 P.3d 1256, 1261 (Or. 2002) (explaining that the "court's consideration of [defendant's] defense based on the learned intermediary doctrine begins and ends with our construction of the pertinent product liability statutes").

The question is which state has a greater interest in its policy determinations applying to the facts of this case. Oregon certainly has an interest in ensuring that its injured citizens have legal recourse. It is less clear whether Oregon has a strong interest in its law providing that recourse, especially in a case like this, where Mr. Peterson received the product in a different state, before becoming an Oregon citizen, and was not injured until after the product was taken off the market. Pennsylvania, on the other hand, does have a strong interest in its law providing the recourse for plaintiffs like Mr. Peterson. Pennsylvania has developed a body of product-liability law that balances economic considerations with social policy. Here, from a purely economic standpoint, Pennsylvania is directly implicated. The Bard Defendants marketed and sold the Eclipse in Pennsylvania. Although ultimately completed through a third party, the transaction between the Bard Defendants and Mr. Peterson occurred in Pennsylvania. Setting aside economics, Pennsylvania also has an interest in its citizens receiving safe products in its

hospitals. Considering these policy considerations, along with Oregon's and Pennsylvania's relationship to the parties and this dispute, I find Pennsylvania would sustain the most serious legal, social, and economic consequences of the choice-of-law determination. *See* OLC Commentary 29.

In sum, as to issues of product liability, the Bard Defendants have demonstrated that the application of Pennsylvania law is substantially more appropriate than the application of Oregon law. Thus, the second exception is satisfied, and I will apply Pennsylvania law to these issues.

### b)    Punitive Damages

Again, under the second exception, a party must "demonstrate[] that the application of the law of a state other than Oregon to a disputed issue is substantially more appropriate." Or. Rev. Stat. § 15.435(3). I make this determination based on the principles of the residual approach. *Id.* For all the reasons discussed above, especially this case's lack of any foreseeable connection to Oregon, along with its strong ties to Pennsylvania, I find that Pennsylvania law is substantially more appropriate than Oregon law. However, that is not the end of the analysis. On this issue, the Bard Defendants argue that Arizona law is even more appropriate than Pennsylvania law. I turn to that issue next.

Arizona law does not need to be *substantially* more appropriate than Pennsylvania law. For the second exception to apply, a party must show that the law of another state is substantially more appropriate than *Oregon* law, and I already found that Pennsylvania law satisfies that requirement. If I find that Arizona law is more appropriate than Pennsylvania law, then, as a simple matter of logic, it too is substantially more appropriate than Oregon law. And under the residual approach, I am instructed to determine the most appropriate law. *Id.* § 15.445. Thus, if

Arizona law is more appropriate than Pennsylvania law to the issue of punitive damages, even by just a hair, then I must apply it.

It makes sense that a different state's law might apply to the issue of punitive damages. Compensatory damages and punitive damages "serve distinct purposes." *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). "The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Id.* "The latter, which have been described as 'quasi-criminal,' operate as 'private fines' intended to punish the defendant and to deter future wrongdoing." *Id.* (internal citation omitted). "A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation." *Id.*

The difference between compensatory and punitive damages has a role to play in the choice-of-law analysis. Courts have recognized that "[w]here the injury occurred and where the relationship of the parties is centered are less important in the punitive damages context." *Rowland*, 983 F. Supp. 2d at 624. However, courts are split on how to resolve the competing interests presented by this particular choice-of-law issue.

Some courts emphasize the defendant's conduct in the state where the product was marketed and sold. In *Rowland*, plaintiffs were prescribed and ingested a drug in Pennsylvania, but the drug was researched, marketed, labeled, and packaged in New Jersey. *Id.* at 625. The court emphasized that the defendant "knowingly and affirmatively reach[ed] into Pennsylvania, conduct[ed] business within its territory, and market[ed] and [sold] products that allegedly harm[ed] Pennsylvania citizens." *Id.* at 626. The court discounted the corporate activity that occurred in New Jersey, explaining that "the place where the Defendant engaged in certain

conduct is of less significance in situations where a potential Defendant might choose to conduct his activities in a state whose tort rules are favorable." *Id.* at 625. The court concluded:

> New Jersey's legislative decision as to the availability and potential magnitude of punitive damages cannot conclusively extend to conduct by a New Jersey corporation that occurred in Pennsylvania and allegedly caused injuries in Pennsylvania in those circumstances in which Pennsylvania also has such a vital and articulated interest in preventing harm to its citizens and in which the Defendant has knowingly and purposefully elected to deliver its products to Pennsylvania residents.

*Id.* at 626–27.

Other courts emphasize the defendant's conduct in the state where the product was designed and manufactured. In *Williams v. Novartis Pharmaceuticals Corp.*, the court believed "*Rowland* was wrongly decided." 15 F. Supp. 3d 761, 767 (S.D. Ohio 2014). That court reasoned that "the focus, for purposes of a choice-of-law analysis, needs to be on the place where the defendant's alleged corporate misconduct occurred." *Id.* at 768. The court explained that the interest of the state where the drug was prescribed (here, Ohio) was satisfied by that state's law applying to the issue of liability and compensatory damages. *Id.* The Court concluded that Ohio's "interest in punishing and deterring manufacturers who market dangerous drugs to its citizens" was "generally outweighed" by the interest of the state in which the alleged corporate misconduct primarily occurred. *Id.* The court concluded that defendant "has a justified expectation that New Jersey law will govern the question of whether punitive damages are warranted for its conduct within that state, and application of New Jersey law to the issue of punitive damages will promote certainty, predictability, and uniformity of result." *Id.* at 768–69 (internal quotation marks omitted).

In *Stromenger v. Novartis Pharmaceuticals Corp.*, the court reached the same conclusion as the court in *Williams*. 941 F. Supp. 2d 1288 (D. Or. 2013). The court found persuasive the

argument that the defendant's "New Jersey business activities, including its interactions with the FDA, formed the foundation of the plaintiffs' claims for punitive damages." *Id.* at 1296. Although the plaintiff's injury occurred elsewhere, the court reasoned that "punitive damages are not intended to compensate one for an injury but rather to deter and to punish bad conduct." *Id.* at 1297. The court considered the policies at play and determined that the law of the defendant's primary place of business—New Jersey—should apply in order to meet the defendant's "expectations of punishment or deterrence for bad acts." *Id.* at 1298. "New Jersey has made a policy decision on how to impose punitive damages, and has an interest in its citizens being governed by those provisions." *Id.* (quoting *Talley v. Novartis Pharm. Corp.*, No. 3:08-CV-361-GCM, 2011 WL 2559974, at 4 (W.D.N.C June 28, 2011)).

Although this is a close call, I conclude Arizona law should apply to the issue of punitive damages. Turning to the first factor of the residual approach, the Bard Defendants marketed and sold its product in Pennsylvania. But they designed, tested, and manufactured the product in Arizona. They also developed the product's instructions and marketing material in Arizona; developed written communications to physicians in Arizona; trained its sales force on how to interact with physicians in Arizona; and communicated with the FDA about the Eclipse filter in Arizona. At bottom, although the Bard Defendants' alleged misconduct eventually spread beyond Arizona, the foundation of that misconduct was formed in Arizona.

The difference between compensatory and punitive damages matters here. As I stated above, compensatory damages are intended to redress the concrete loss that the plaintiff has suffered because of the defendant's misconduct. *Cooper Indus.*, 532 U.S. at 432. The focus is on the relationship between the parties: where that relationship centered and what about that relationship led to the plaintiff's injuries. *See id.* ("A jury's assessment of the extent of a

plaintiff's injury is essentially a factual determination . . . ."). But when resolving an issue of punitive damages, the focus shifts from the relationship between the parties to the egregiousness of the defendant's misconduct. *See id.* (explaining that punitive damages are "quasi-criminal, operate as private fines intended to punish the defendant and to deter future wrongdoing," and reflect the jury's "moral condemnation (internal citation and quotation marks omitted)); *Rowland*, 983 F. Supp. 2d at 624 ("Where the injury occurred and where the relationship of the parties is centered are less important in the punitive damages context."). The Bard Defendants' alleged misconduct began in Arizona and proliferated from Arizona. Arizona law should determine whether and to what extent they should be punished and deterred form future wrongdoing.

The remaining factors of the residual approach do not change the result. Courts have grappled with the policy considerations at play. Both Arizona and Pennsylvania have good reason to want their laws to apply. As emphasized in *Rowland*, Pennsylvania has an interest in punishing corporations that reach into its state and sell defective products that harm its citizens.[5] And, as emphasized in *Williams* and *Stromenger*, Arizona has an interest in regulating the conduct of companies in its state through the imposition of punitive damages, which punish bad conduct and deter future wrongdoing. Arizona has made a policy decision on how to impose punitive damages. *See* Ariz. Rev. Stat. § 12-689(A). It has decided to encourage companies to comply with government regulation by removing the threat of punitive damages from those that do. *Id.*; *Hale v. Norcold Inc.*, No. CV-18-03597-PHZ-MTL, 2020 WL 1911214, at *3 (D. Ariz. Apr. 20, 2020) ("It was the Arizona Legislature's determination punitive damages are an

---

[5] This interest is substantially more significant than Oregon's interest in this case. Here, the Bard Defendants did not reach into Oregon and sell a defective product to an Oregon citizen.

excessive penalty when assessed against a manufacturer of a product that adheres to government specifications.").

I believe Arizona has more of an interest in its law governing the issue of punitive damages. As other courts have recognized, Pennsylvania's interest is largely satisfied by its law applying to the issues of liability and compensatory damages. At best, Pennsylvania's policy interest is equivalent to Arizona's. But even if that were true, I would still apply Arizona law here, given all the relevant conduct that occurred there. The Bard Defendants' Arizona business activities form the foundation of Mr. Peterson's claim for punitive damages, tipping the balance in favor of applying Arizona law.

## II.    Clarification of Prior Ruling

I have already dismissed Mr. Peterson's strict-liability claim premised on failure to warn. *See* Minutes of Proceedings [ECF 70]. I write briefly here to clarify my reasoning. As I understand it, Mr. Peterson believes whether comment k of the Restatement (Second) of Torts § 402A bars his strict-liability claims depends on the adequacy of the warnings given. And whether the warnings given were adequate should go to the jury—especially since I have allowed the failure-to-warn claim to move forward on a negligence theory. Although logical, I disagree with this argument.

The root of the problem is comment k, which "is not itself a model of clarity." *Lance v. Wyeth*, 85 A.3d 434, 451 (Pa. 2014). Comment k provides that a seller of an unavoidably unsafe product is not strictly liable for negative outcomes "with the qualification that they are properly prepared and marketed, and proper warning is given." Restatement (Second) of Torts § 402A cmt. k (1965). This suggests that a seller of an unavoidably unsafe product might be strictly liable if a proper warning were not given.

Nevertheless, in *Hahn*, the Pennsylvania Supreme Court held that "where the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, i.e., the manufacturer's negligence, is the only recognized basis of liability." 673 A.2d at 891.[6] Accordingly, if comment k applies here, then the only recognized basis of liability for Mr. Peterson's failure-to-warn claim is negligence.

And, as I explained at the hearing, I believe the Pennsylvania Supreme Court would extend comment k to cover IVC filters. I recognize that the Pennsylvania Supreme Court has recently criticized *Hahn*'s categorical approach. *E.g.*, *Lance*, 85 A.3d at 452 n.21 (stating that "the truncated analysis in the *Hahn* line offers a poor foundation for extrapolation"). However, *Hahn* remains good law. *See id.* (emphasizing that the Court was "not revisiting *Hahn*"). And I do not see a principled way to distinguish IVC filters, prescription medical devices implanted inside the body, from prescription drugs. *See, e.g.*, *Ebert v. C.R. Bard, Inc.*, 459 F. Supp. 3d 637, 653 (E.D. Pa. 2020) (concluding, based on a fully developed factual record, that the Bard filter at issue in that case "is an 'unavoidably unsafe product,' such that the Pennsylvania Supreme Court would apply comment k to the filter, thereby shielding Bard from a strict liability claim"). Even Mr. Peterson seemingly admits that IVC filters are unavoidably unsafe: "Bard's warnings indicated only that its filters may tilt, migrate, or fracture—*complications that exist for all filters*." Pl.'s Resp. [ECF 53] at 20 (emphasis added). Although the Pennsylvania Supreme Court might not extend comment k to all prescription medical devices, I predict that it would extend comment k to IVC filters.

---

[6] This is where Pennsylvania law deviates from Oregon law. In Oregon, sufficient warnings are "a predicate" to protection under comment k. *Senn*, 751 P.2d at 218 n.4.

Acknowledging my ruling on this issue, Mr. Peterson has conceded that his remaining strict-liability claim, for design defect, cannot be meaningfully distinguished and should be dismissed.

## CONCLUSION

For the above reasons, I hold that Pennsylvania law governs the issues presented in this case. The one exception is Mr. Peterson's claim for punitive damages, to which Arizona law applies.

I further clarify that Mr. Peterson's strict-liability claim premised on failure to warn is barred under Pennsylvania law, and I accept Mr. Peterson's concession that his strict-liability claim premised on design defect cannot be meaningfully distinguished. Accordingly, I GRANT Defendants' oral motion for summary judgment as to Count III.

To summarize my rulings: For the reasons stated at oral argument and in this opinion, Defendants' Motion for Partial Summary Judgment [ECF 41] is GRANTED in part and DENIED in part. The Motion is GRANTED as to Counts II, X, XI, and the issue of punitive damages. The Motion is DENIED as to Counts IV and VII. Plaintiff has withdrawn Counts I, V, and IX. Defendants' oral motion for summary judgment as to Count III is GRANTED.

IT IS SO ORDERED.

DATED this 2nd day of March, 2021.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge