IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| JUSTIN PETERSON,<br><br>          Plaintiff,<br><br>     v.<br><br>C R BARD INCORPORATED; and BARD PERIPHERAL VASCULAR INCORPORATED,<br><br>          Defendants. | No. 3:19-cv-01701-MO<br><br>OPINION AND ORDER |

**MOSMAN, J.,**

A jury found in favor of Plaintiff Justin Peterson. Before me is Defendants' Renewed Motion for Judgment as Matter of Law and Motion for New Trial [ECF 213] ("Post-Trial Motions"). For the following reasons, I DENY the Post-Trial Motions.

## DISCUSSION

After an eight-day trial, the jury returned a verdict in favor of Mr. Peterson on both his claims: negligent design defect and negligent failure to warn. Jury Verdict [ECF 200]. The jury awarded him $370,000 for pain and suffering and $556,000 for loss of enjoyment of life, for a total award of $926,000. *Id.*

Now, Defendants Bard Peripheral Vascular, Inc. and C. R. Bard, Inc. (collectively, "Bard") move for various forms of post-trial relief. First, Bard renews its pre-verdict motion for

1 – OPINION AND ORDER

judgment as a matter of law ("JMOL"), which I denied in part. Mins. of Proceedings [ECF 191]. Second, Bard moves for a new trial. Third, Bard moves for remittitur. I discuss each motion in turn.

I.      **Renewed Motion for Judgment as a Matter of Law**

Bard argues that the evidence does not support the jury's verdict on either count. Post-Trial Motions [ECF 213] at 10. Bard claims that Mr. Peterson "failed to demonstrate that a different warning, if given, would have led to a different treatment decision." *Id.* at 11. Bard further claims that Mr. Peterson "failed to prove a defect under the proper application of Pennsylvania law and failed to prove causation under any circumstances." *Id.*

A district court may grant a motion for JMOL if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

Bard has repeatedly made these same arguments, and I have repeatedly denied them. I stand by my rulings made at the summary-judgment hearing and throughout trial. On the failure-to-warn claim, I concluded that a rational juror could reasonably infer from Dr. Goodman's testimony that Dr. Goodman would have acted differently had he received a different warning. Tr. Day 5 (Afternoon Session) [ECF 221] at 701–02.

On the design claim, I have consistently rejected Bard's reading of *Lance v. Wyeth*, 85 A.3d 434 (Pa. 2014). I now understand, having witnessed the full trial, that Mr. Peterson's theory essentially was that the Eclipse filter was too dangerous to be used by anyone.[1] But this was not

---

[1] Since this was his theory, and the jury found in his favor, it seems likely that Mr. Peterson would have succeeded even under the law as Bard sees it.

2 – OPINION AND ORDER

clear before trial began. Moreover, under my reading of *Lance*, Mr. Peterson was not required to succeed on that theory to prove negligent design.[2]

Finally, also on the design claim, I previously rejected Bard's lack-of-causation theory, and I stand by my prior ruling. Tr. Day 5 (Afternoon Session) [ECF 221] at 704 (ruling that Mr. Peterson could prove causation by proving that a different filter would have presented a lower risk, even though the risk would not necessarily have been eliminated). The jury heard evidence of other, ostensibly safer filters. *E.g.*, Tr. Day 5 (Morning Session) [ECF 229] at 615–16. The jury heard evidence that the Eclipse filter was negligently designed. *E.g.*, Tr. Day 3 (Afternoon Session) [ECF 219] at 459–60. Considering the totality of the evidence, the jury had a legally sufficient basis to conclude that the implantation of a negligently designed filter that came with comparatively higher risk caused Mr. Peterson's injuries.

I DENY Bard's motion for JMOL.

## II.    Motion for New Trial

Bard argues for a new trial for one of two reasons. First, Bard argues that a new trial is necessary "given the irremediable prejudice that followed from the filter death testimony offered by Dr. Hurst in knowing violation of the Court's in limine order." Post-Trial Motions [ECF 213] at 10–11. Second, Bard argues that a new trial is required because of instructional error. *Id.* at 11.

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are

---

[2] The *Lance* question has been certified to the Pennsylvania Supreme Court and will soon be definitively resolved. *Ebert v. C.R. Bard, Inc.*, No. 20-2139, 2021 WL 2656690, at *2–4 (3d Cir. June 24, 2021).

excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "[T]he district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (alterations accepted) (internal quotation marks and citation omitted).

I have already denied Bard's motion for a mistrial based on Dr. Hurst's misconduct at trial. Tr. Day 5 (Afternoon Session) [ECF 221] at 708–09. I stand by my prior ruling. Weighing the evidence as I saw it, in my conscientious opinion, the jury's verdict was not contrary to the clear weight of the evidence, even considering the improper testimony.

Bard urges me to take another look at its instructional arguments, which Bard admits I previously addressed before the verdict. Post-Trial Motions [ECF 213] at 20, 24. I have exhaustively rejected Bard's arguments on these points, and I stand by my pre-verdict rulings.

### III. Motion for Remittitur

Bard argues that the $556,000 award for loss of enjoyment of life "is plainly excessive, likely as a result of the prejudice engendered by Dr. Hurst's testimony." *Id.* at 11. Specifically, Bard takes issue with the "relatively short duration" of Mr. Peterson's injury and claims he "has since made a full recovery." *Id.* at 33.

In this diversity case, state law applies to the issue of remittitur. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 430–31 (1996); *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 768 F. App'x 756, 758 (9th Cir. 2019). In Pennsylvania, remittitur "is appropriate only when the award is plainly excessive and exorbitant." *Haines v. Raven Arms*, 640 A.2d 367, 369 (Pa. 1994). "The question is whether the award of damages falls within the uncertain limits of fair and

4 – OPINION AND ORDER

reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Id.*

I do not find the jury's award plainly excessive or exorbitant. Mr. Peterson, a young man in the prime of his life, suffered a life-threatening abdominal hemorrhage and believed he was going to die. Tr. Day 2 (Morning Session) [ECF 226] at 189–96. He told his wife: "I love [you] and . . . I think I'm dying now." *Id.* at 191. He underwent a complex, invasive surgery to remove a Bard filter that had perforated his inferior vena cava, protruding into his duodenum. Tr. Day 3 (Morning Session) [ECF 227] at 296, 308, 313. Although most of the filter was successfully removed, a piece remains lodged in his spine. *Id.* at 342. Mr. Peterson, a farm manager, testified about his recovery and what has changed in his life:

> I'm really physically active; and, you know, I manage people in a way where, you know, I lead by example, and if we're doing a project, I'm the one working the hardest, you know, and setting an example for the rest of the team. And, you know, it was eight weeks before I could get back to work, but I wasn't— I wasn't able to lift anything or climb on any tractors or anything like that. So, really, all I was doing was standing around, telling people what to do, which is hard for me. It's not how I work, and it's not how I normally do things.
>
> . . .
>
> I think what is different is if someone else is around, I would ask them to lift heavier boxes, but I think the most notable thing is I'm just not the same 100 percent that I was before these surgeries where—you know, I was the kind of person where, you know, just throwing boxes on carts and really getting at it. I really don't work that way anymore.
>
> I'm still fully capable of doing all of my job duties, but it's not at a hundred percent, and it's with a little bit of fear that I do it sometimes.
>
> . . .
>
> I mean, I think the biggest silver lining was getting another lease on life, you know, and thinking about what is really important to me: My wife, my daughter, doing good work. And just getting another chance, you know, I think it changed my perspective on what is important, and I—I don't think I sweat the small stuff the same way I used to.

Tr. Day 2 (Morning Session) [ECF 226] at 200–03.

Bard attempts to capitalize on Mr. Peterson's optimism, grace, and modesty. Having observed Mr. Peterson on the stand and heard his story, I find it entirely plausible that the jury determined, despite his positive outlook on life, that Mr. Peterson is a stoic who has suffered a significant loss of enjoyment of life and should be compensated accordingly—even if he is handling his circumstances admirably. By no means does the award shock the sense of justice, and I deny the request for remittitur.

## CONCLUSION

For the above reasons, I DENY Bard's Post-Trial Motions [ECF 213].

IT IS SO ORDERED.

DATED this __11__ day of August, 2021.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge